UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARVIN A.,[1] | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | No. 1:23-cv-1102-MG-SEB |
| | ) | |
| MARTIN O'MALLEY, Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| *Defendant.* | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

On October 3, 2014, Plaintiff Marvin A. applied for Title XVI Supplemental Security Income ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of August 15, 2008, later amended to October 3, 2014. [Filing No. 13-3 at 3; Filing No. 13-5 at 28.] His application was initially denied on February 19, 2015, [Filing No. 13-3 at 2-11], and upon reconsideration on April 13, 2015, [Filing No. 13-4 at 13-23]. Administrative Law Judge ("ALJ") Matthew Johnson conducted hearings on November 8, 2016 and January 31, 2017. [Filing No. 13-2 at 38-92.] The ALJ issued a decision on May 5, 2017, concluding that Plaintiff was not entitled to receive benefits. [Filing No. 13-2 at 11-26.] The Appeals Council denied review on April 10, 2018. [Filing No. 13-2 at 2-6.]

Plaintiff sought further review of the decision and the case was remanded by the Northern District of Indiana on August 21, 2019. [Filing No. 13-9 at 35-43.] The subsequent Order of the

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

Appeals Counsel returning the application for a second hearing noted Plaintiff was found disabled as of May 11, 2017, in a separate application. [Filing No. 13-9 at 46.] After a second hearing on October 14, 2020, [Filing No. 13-8 at 60-91], ALJ Janet Akers issued an unfavorable decision on November 3, 2020, for the period of October 3, 2014 through May 10, 2017, [Filing No. 13-9 at 52-70]. On May 19, 2021, the Appeals Council then returned the application to the ALJ for a third hearing. [Filing No. 13-9 at 80-83.] After a third hearing on, October 8, 2021, [Filing No. 13-8 at 92-123], ALJ Janet Akers again issued an unfavorable decision on March 2, 2022, for the same period. [Filing No. 13-8 at 11-30.] The Appeals Council denied review on April 24, 2023. [Filing No. 13-8 at 2-5.]

On June 23, 2023, Plaintiff filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.] The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 7.] For the following reasons, the Court **AFFIRMS** the decision of the ALJ denying Plaintiff benefits.

## I.
### STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

---

[2] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens,* 888 F.3d at 327. For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul,* 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek,* 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens,* 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch,* 981 F.3d at 601 (quoting *Summers v. Berryhill,* 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul,* 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin,* 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens,* 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step

four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform His own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Plaintiff was 50 years old on October 3, 2014—the date of his alleged onset of disability. [Filing No. 13-3 at 3.] Plaintiff has at least a high school education and does not have past relevant work. [Filing No. 13-3 at 9.] Plaintiff's applications allege that he can no longer work because he has blindness in his left eye, glaucoma, and depression. [Filing No. 13-3 at 2.] Following the

October 2021 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Plaintiff was not disabled. [Filing No. 13-8 at 11-30.]

Specifically, the ALJ found as follows:

- At Step One, Plaintiff has not engaged in substantial gainful activity[3] since October 3, 2014 (the application date). [Filing No. 13-8 at 14.]

- At Step Two, Plaintiff "has the following severe impairments: hypertension, obstructive sleep apnea (OSA), left eye post-traumatic corneal sclerosis and retinal detachment, cocaine abuse, and osteoarthritis status-post video arthroscopy with partial medial lateral meniscectomy and chondroplasty in the bilateral knees." [Filing No. 13-8 at 14.]

- At Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 13-8 at 20.] The ALJ specifically considered Sections 1.15, 1.16, 1.18, 2.02. 2.03, 2.04, 3.00, and SSR 13-2p and 19-2p. [Filing No. 13-8 at 20.] As to the "paragraph B" criteria for Listings 12.04 and 12.06, the ALJ found that Plaintiff had "mild" limitations in all four functional areas. [Filing No. 13-8 at 17-18.]

- After Step Three but before Step Four, Plaintiff had the RFC "to perform light work as defined in 20 CFR 416.967(b) except, he was limited to occasional climbing of ramps and stairs with no climbing ladders, ropes, or scaffolds. He should avoid unprotected heights and moving mechanical parts; was limited to occasional balancing, stooping, kneeling, crouching, or crawling, as well as occasional climbing of ramps/stairs, but could never climb ladders, ropes or scaffolds. He should avoid unprotected heights and moving mechanical parts and cannot operate a commercial motor vehicle. He could tolerate frequent exposure to irritants and chemicals. He was limited to work that allows vision only in the right eye, precludes assembly line work, and was further limited to work requiring no more than frequent near acuity, with clarity of vision at 20 inches or less. He requires allowance for use of a hand-held assistive device, including a cane, for walking on uneven terrain or ascending or descending slopes." [Filing No. 13-8 at 20-21.]

- At Step Four, the ALJ found Plaintiff has no past relevant work. [Filing No. 13-8 at 29.]

- At Step Five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

numbers in the national economy that the claimant can perform, including housekeeping cleaner, marker, and office helper. [Filing No. 13-2 at 29-30.] The ALJ found Plaintiff was not under a disability during the relevant period—from the amended alleged onset date of disability, October 3, 2014, through May 10, 2017, the day prior to the date Plaintiff was found disabled in connection with a different application. [Filing No. 13-8 at 30.]

### III.
### DISCUSSION

Plaintiff argues that the ALJ erred in two aspects: (1) in her RFC evaluation by failing to explain what evidence she relied on and how it supported her conclusions under SSR 96-8p; and (2) by failing to provide a supportable basis for finding Plaintiff's subjective statements were inconsistent with any record evidence. [Filing No. 15 at 3.] The Commissioner ultimately argues the ALJ sufficiently articulated the RFC's findings, as SSR 96-8 does not require an ALJ to engage in a function-by-function evaluation, and the ALJ's analysis of Plaintiff's subjective symptoms is supported. [*See generally,* Filing No. 17.]

### A.    RFC and SSR 96-8p

The RFC represents "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). *See* 20 C.F.R. § 404.1545(a)(1). "The RFC assessment must . . . identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, Fed. Reg. 34474-01 (July 2, 1996). The Court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Jeske v. Saul*, 955 F.3d 583, 595-96 (7th Cir. 2020). "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [the Court] can assess the validity of the agency's ultimate findings." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The ALJ has the final responsibility for determining a claimant's RFC, though medical sources are to be considered. 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 404.1546(c). In assessing a claimant's RFC, the ALJ must weigh the evidence and consider conflicting medical opinions considering all other evidence in the record. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Only if there is insufficient evidence to resolve an inconsistency or insufficiency within the record evidence itself may an ALJ recontact the medical source or ask others for more information." *Kelli H. v. Saul,* 2020 WL 1501877, at *3 (S.D. Ind. Mar. 30, 2020) (citing 20 C.F.R. § 416.920b(b)(2)). An ALJ, while not having to rely on opinion evidence in formulating RFC limitations, must provide a narrative with citations to record evidence for how these restrictions were derived pursuant to SSR 96-8p. "[T]he 7th Circuit has long cautioned ALJ's against succumbing to the temptation to play doctor" when deciding residual functional capacity. *See, e.g.*, *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990); *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001); *Lopez v. Barnhart*, 336 F.3d 535 (7th Cir. 2003), *Moon v. Colvin¸*763 F.3d 718, 722 (7th Cir. 2014). Only when the ALJ's conclusion is not supported by medical evidence in the record has the ALJ inappropriately played doctor. *See, e.g., Engstrand v. Colvin¸*788 F.3d 655, 660-61 (7th Cir. 2015); *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015).

Here, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), which defines light work as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weight up to ten pounds and requires "a good deal of walking or standing." The ALJ ultimately added limitations in the RFC, including requiring Plaintiff to avoid unprotected heights and moving mechanical parts, no operating of a commercial

motor vehicle, restriction to frequent exposure to irritants and chemicals, and use of a cane for walking on uneven terrain or ascending or descending slopes. [Filing No. 13-8 at 20-21.]

Plaintiff disputes the ALJ's RFC findings that he could sustain light work, with only an allowance of an assistive device for walking on uneven terrain or ascending and descending slopes, among other limitations assessed. He presents two alleged errors of the ALJ evaluation of the record when drafting the RFC.

### 1. Medical Evidence

First, in attacking the ALJ's review of the medical record, Plaintiff specifically challenges the RFC regarding accommodations to his knee impairments and obstructive sleep apnea. Plaintiff says his required use of a cane is beyond the ALJ's assessment, alluding to a requirement for a more substantial sit/stand limitation which would cause him to be unable to perform work at the light exertional level. [Filing No. 15 at 8.] He then says the ALJ failed to explain how she was able to reach her RFC conclusion on her own without authoritative medical input, suggesting the ALJ was required to consult a medical expert as support for her additionally assessed RFC limitations. [Filing No. 15 at 8.] Plaintiff argues that the ALJ improperly played doctor by reviewing and interpreting medical evidence. [Filing No. 15 at 11.] According to the Commissioner, no medical professional opined Plaintiff could not work; nor does the record contain a medical opinion imposing stricter limitations than those in the RFC. [Filing No. 17 at 7.]

In addition to the medical records and Plaintiff's testimony, the ALJ reviewed four physician opinions when formulating Plaintiff's functional limitations. In February 2015, and upon reconsideration in April 2015, State agency medical consultants Dr. Sands and Smartt concluded that Plaintiff could work at the light exertional level, with postural and environmental restrictions, as well as visual limitations concerning his left eye, and did not need assistance to stand and/or

walk for six hours per workday and could sit for six hours in an eight-hour workday. [Filing No. 13-3 at 7, 19.] The ALJ provided partial weight to these consultants. [*See* Filing No. 13-3 at 6-7; 19-20.] The ALJ assigned only partial weight because she determined that evidence submitted after the State agency consultants' review caused her to find additional limitations were warranted, including severe impairments of hypertension, obstructive sleep apnea, and osteoarthritis in the bilateral knees, and non-severe impairments of maxillary sinusitis, benign hypertensive heart disease, and obesity. [Filing No. 13-8 at 27-28.] The ALJ then considered the January 2016 opinion of physical therapist, Karen Johnson, who opined that Plaintiff should avoid "heavy lifting and prolonged standing in a slightly forward bent position." [Filing No. 13-8 (citing Filing No. 13-7 at 453-459).] The ALJ gave this opinion little weight as she found "heavy lifting" to be vague and did not inform the RFC, and the restriction that Plaintiff must stand in a "slightly forward bent position," was not reflected in the overall medical evidence of record. [Filing No. 13-8 at 28.] Lastly, the ALJ considered the October 2020 opinion of nurse practitioner, Samantha Lewis, who opined that Plaintiff (in relevant part) could stand for 30 minutes for sitting or walking, sit for about two hours and stand/walk for less than two hours, never lift 20lbs and rarely lift 10lbs or less, and did not require the use of a cane or assistive device when standing or walking. [Filing No. 13-8 at 28 (citing Filing No. 13-13 at 5-14).] Nurse Lewis indicated that her opinion and assessed limitations could reasonably be applied back to 2015. [Filing No. 13-13 at 13.] The ALJ gave this opinion little weight, however, finding no treatment notes were present in the record during the relevant period from this provider, and as of the date the form was completed, Plaintiff was already in payment status. [Filing No. 13-8 at 28.]

      **i.**     **Cane Use and Knee Impairments**

The Commissioner argues no medical provider described when Plaintiff needed to use a cane, beyond a prescription for miscellaneous daily use, and no provider corroborated his account that he needed a cane in situations not accounted for in the RFC finding. [Filing No. 17 at 7.] The Court agrees with the Commissioner. Reading the ALJ's decision as a whole, the Court finds the ALJ's RFC findings regarding cane usage, along with other limitations to address his knee impairments, were supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (an ALJ's decision is reviewed by the court for support by substantial evidence – no more than "a reasonably mind might accept as adequate to support a conclusion") (internal quotations and citations omitted). Plaintiff's assertion that the ALJ improperly played doctor or erroneously relied on her own interpretation of that evidence to translate into work-related limitations is unpersuasive.

When the RFC is formulated, the claimant bears the burden of proof. *Briscoe*, 425 F.3d at 352. To account for Plaintiff's knee impairments, the ALJ limited the amount he needed to climb ramps and stairs and maintain postures, as well as using a cane for ascending and descending slopes. In arriving at this conclusion, the ALJ discussed the medical opinions and cited medical records relating to Plaintiff's knee impairments and cane usage. She observed ample mention of daily cane usage beginning in August 2016, following the State agency consultative examinations, and following both of his knee surgeries. [Filing No. 13-7 at 313, 315, 321, 323-26.] However, the ALJ found Plaintiff's account of cane use to be unpersuasive because he did not present opinions from any treatment provider corroborating his account of limitations, or that he needed walking assistance in the way he described. [Filing No. 13-8 at 28.] The ALJ detailed Plaintiff's recovery was progressing well post-surgery, noting subsequent examinations being unremarkable, showing no abnormalities in his extremities, aside from trace edema in the lower left extremity and

tenderness in the right knee, and no difficulty walking. [*See* Filing No. 13-8 at 22, 24 (citing Filing No. 13-7 at 177, 311, 313, 316, 317, 320, 323, 325.] Further, the ALJ assessed that a note made in October 2016, regarding instability when putting weight on his foot, was not substantial as Plaintiff ceased treatment through May 2017, when his period of disability began. [Filing No. 13-8 at 25.] The ALJ concluded Plaintiff had not carried his burden to prove a more-restrictive RFC with respect to additional sit/stand/walking limitations. Contrary to Plaintiff's assertion, this conclusion is adequately supported by the evidence in front of, and cited by, the ALJ, and the Court will not commit error by second guessing the ALJ's weighing of this evidence. *See Lopez*, 336 F.3d 539 (7th Cir. 2003) (ALJ's finding reversed by reviewing court only when findings are unsupported by substantial evidence or contain legal error). While Plaintiff claims the ALJ improperly played doctor and interpreted medical evidence, as noted more thoroughly below, it is only when the ALJ's conclusion is not supported by any medical evidence in the record that the ALJ has inappropriately played doctor. *See, e.g., Engstrand*,788 F.3d at 660-61; *Hill*, 807 F.3d at 868. It was within the ALJ's authority to make inferences from the evidence in the record and find that Plaintiff's additional impairments and symptoms could reasonably limit his RFC beyond the restrictions recommended by the State agency examiners, but less so than his own subjective statements, and provide cane usage for a limited purpose of uneven terrain or ascending and descending slopes, among other limitations accommodating his knee impairments.

### ii.    Obstructive Sleep Apnea

Plaintiff next argues the ALJ failed to properly consider obstructive sleep apnea in his ability to be on his feet most of the day. [Filing No. 15 at 11.] According to Plaintiff, the ALJ purported to understand his obstructive sleep apnea impairment to the extent she knew a limitation to frequent exposure to irritants and chemicals would accommodate it, but it was unclear how she

was able to draw such specific medical conclusions. [Filing No. 15 at 11-12.] The Commissioner argues no provider or expert opined that sleep apnea caused any limitations or precluded performance of work in the RFC finding, therefore Plaintiff cannot show the assessed RFC failed to reasonably accommodate any limitations relating to sleep apnea. [Filing No. 17 at 16.] The Court once again agrees with the Commissioner.

Regarding sleep apnea, the ALJ found that Plaintiff's impairment was "severe." [Filing No. 13-8 at 14.] As discussed above, the evidence put before the ALJ consisted of Plaintiff's testimony, the medical records, and the opinions of Drs. Sands, Smartt, PT Johnson, and Nurse Lewis. [Filing No. 13-8 at 21-28.] The ALJ noted that Plaintiff was observed by the consultative internal medical examiner, Dr. R. Jao, to be in no respiratory distress, despite notes he was a daily smoker, and his primary complaints were related to visual deficits. [Filing No. 13-8 at 23.] The ALJ then observed that Plaintiff underwent a sleep study, confirming the diagnoses of obstructive sleep apnea, and began treatment with a CPAP machine. [Filing No. 13-8 at 23.] The ALJ noted a documented improvement of symptoms with CPAP use in September 2015, as well as his continued use of a CPAP mask nightly through the October 2020 hearing, remarking that testing throughout the relevant period showed no significant obstructions. [Filing No. 13-8 at 23.] Drs. Sands and Smartt detailed environmental limitations, but only about avoiding concentrated exposure to machinery and heights. [Filing No. 13-3 at 8, 21.] PT Johnson and Nurse Lewis did not opine any environmental limitations that would affect Plaintiff's ability to work. [See Filing No. 13-7 at 453-459; Filing No. 13-13 at 14.] Lastly, as discussed in more detail below, the ALJ did not find Plaintiff's testimony regarding his sleep apnea and obesity persuasive considering this other evidence, but found the record indicated a more restrictive RFC than the opinion's evidence of the State agency experts provided. In sum, Plaintiff failed to carry his burden of proving a more

restrictive RFC is appropriate here; the Court finds no error in either the ALJ's review of the medical records and opinions relating to obstructive sleep apnea, or in her ultimate RFC determination.

### iii.    Playing Doctor

To the extent Plaintiff argues the challenged decisions by the ALJ amount to "playing doctor," the Court finds this to not be so. Plaintiff cites to three cases as being representative of the ALJ's error, however these cases can be distinguished from the facts here.

First, in *Stage v. Colvin*, 812 F.3d 1121 (7th Cir. 2016), an expert's opinion was necessary, as the State agency experts had not accounted for a treating doctor's total hip replacement recommendation. Here, no provider has suggested the need for more aggressive treatment following Plaintiff's second knee surgery. Further, it is within the ALJ's purview to reasonably assess walking and standing abilities, without requesting another medical expert's testimony, if there is no evidentiary gap between the evidence and the ALJ's RFC finding. *See, e.g., Engstrand*, 788 F.3d at 660-61; *Hill*, 807 F.3d at 868.

Next, in *Moon*, 763 F.3d 718 and *Rohan v. Charter*, 98 F.3d 966 (7th Cir. 1996), the ALJ interpreted imaging evidence or the implications of diagnoses, determining the significance of medical findings themselves. Plaintiff alleges that the ALJ erroneously interpreted MRIs, x-rays, physical examinations, physical therapy findings, a sleep study, and a nuclear stress test. [Filing No. 15 at 11.] The ALJ indeed found a more restrictive RFC than the opinions she found partially persuasive; however, this does not necessarily establish that the ALJ played doctor. *See Suide v. Astrue*, 371 Fed. App'x 684, 690 (7th Cir. 2010). In *Suide*, the Seventh Circuit said, "it is not the ALJ's evaluation of Dr. Orris's reports that requires a remand in this case. Even assuming that Dr.

Orris's opinions did not deserve greater weight, it is the evidentiary deficit left by the ALJ's
rejection of his reports—not the decision itself—that is troubling." *Id.*

Here, the ALJ noted Plaintiff's MRIs, x-rays, physical examinations, physical therapy
findings, a sleep study, and a nuclear stress test, however the ALJ did not make any medical
conclusions using this evidence. *See Back v. Barnhart*, 63 Fed. App'x 254, 259 (7th Cir.
2003) (explaining that typical cases of "playing doctor" involve either "reject[ing] a doctor's
medical conclusion without other evidence," or "draw[ing] medical conclusions themselves about
a claimant without relying on medical evidence"). Regarding the MRIs and x-rays, these were
taken following the State agency experts' opinions, however they were also taken before Plaintiff's
knee surgeries and subsequent follow-up records, which the ALJ evaluated in comparison. [*See*
Filing No. 13-8 at 24-25.] Similarly, the ALJ noted a sleep-study which confirmed a diagnoses of
obstructive sleep apnea and a cardiovascular stress test, taken after the State agency experts'
opinions. [Filing No. 13-8 at 23.] Like the MRI and x-rays, the ALJ observed subsequent treatment
notes indicating improvement or maintenance of symptoms with conservative and continuous
treatment using a CPAP machine. [Filing No. 13-8 at 24-28.] Further, no medical opinions
provided restrictions relating to workplace limitations due to sleep apnea. Lastly, regarding the
physical examinations and physical therapy findings, the ALJ indeed detailed medical records
throughout the relevant period. [Filing No. 13-8 at 24-28.] The ALJ appears to have properly
weighed this evidence against the medical opinion evidence and Plaintiff's own statements,
without drawing independent medical conclusions. While the ALJ crafted an RFC that was more
limiting than the State agency experts opined, though not fully disabling, it was well within the
ALJ's authority to weigh the medical evidence and conclude that it was not entirely consistent with

the opinion evidence that required additional limitations. Accordingly, the Court finds Plaintiff's claim that the ALJ was "playing doctor" is not persuasive.

### 2. Obesity

Second, Plaintiff argues that the ALJ failed to properly consider his obesity in combination with other impairments. [Filing No. 15 at 11.] The Commissioner says the ALJ reasonably accounted for Plaintiff's mild and non-severe obesity, though no provider discussed obesity in any detail. [Filing No. 17 at 16.]

Review of the ALJ's decision reveals Plaintiff's argument to be unpersuasive. The ALJ determined obesity to be non-severe, noting that Plaintiff did not allege specific limitations due to obesity and no significant limitations were evidenced in the record, but her analysis makes it clear that she gave it adequate consideration. In addition to acknowledging the potential for obesity to impact Plaintiff's gait, weight bearing, or balancing, secondary effects, or end organ damage, [Filing No. 13-8 at 15], the ALJ's decision shows consideration of Plaintiff's severe impairments and related limitations. [*See* Filing No. 13-8 at 23-28.] Because the ALJ's decision shows consideration of Plaintiff's obesity, and no other provider discussed limitations due to obesity, the undersigned will not second guess the ALJ's conclusion that it, alone or in combination with other impairments, did not warrant additional limitations.

In sum, despite the alleged errors identified by Plaintiff in challenging the ALJ's RFC, the Court finds that substantial evidence supports the assessed RFC. The Court can trace the line drawn between the evidence and the ALJ's conclusion. As such, the Court declines to reverse on these grounds.

**B.      Subjective Symptom Analysis**

Plaintiff next attacks the ALJ's subjective symptom analysis, alleging it runs contrary to SSR 16-3p. [Filing No. 15 at 17.] An ALJ's evaluation of subjective symptoms will be upheld unless it is "patently wrong." *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's subjective symptom evaluation may be patently wrong where the ALJ fails to "build an accurate and logical bridge between the evidence and the result." *Ribuado v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (internal citation and quotation marks omitted). The ALJ must provide specific reasons supporting her or his evaluation that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

ALJs use a two-step process to evaluate an individual's subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves to step two where the ALJ must consider all the evidence in the record to evaluate the intensity and persistence of an individual's symptoms and determine "the extent to which an individual's symptoms limit her or his ability to perform work-related activities." *Id.* at *4. When assessing a claimant's symptom testimony, the ALJ considers the factors set forth in 20 C.F.R. § 404.1529(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or other symptoms, and (7) other factors concerning a claimant's functional limitations and

restrictions due to pain or other symptoms. *Id.* "[A]n ALJ need not discuss every detail related to every factor…." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021).

An individual's statements about intensity, persistence, and limiting effects of symptoms may not be disregarded "***solely*** because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 2017 WL 5180304, at *5 (emphasis added); *see also Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) (holding that an ALJ "cannot disbelieve [a claimant's] testimony solely because it seems in excess of the 'objective' medical testimony"). That is so because "[t]he etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be 'read off' from a medical report." *Johnson*, 449 F.3d at 806.

Plaintiff testified in October 2021 that during the period at issue, he needed, and the record reflected, a cane for balance while standing, walking, leaving the house, balance, and for pain in his knees and lower back. [Filing No. 13-8 at 99-100.] He further testified he was short of breath while walking. [Filing No. 13-8 at 103.] The ALJ concluded that although Plaintiff's medically determinable impairments could be expected to cause some of the alleged symptoms, his "statements made concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence […]." [Filing No. 13-8 at 25.]

Prior to that statement, the ALJ summarized Plaintiff's medical records, and results of examinations and treatments. [Filing No. 13-8 at 21-25.] After summarizing the medical records, the ALJ concluded as follows:

> [C]laimant's testimony at the hearing and assertions throughout the record, that his alleged impairments and associated residuals essentially result in such limited capacity sufficient to preclude all work activity during the period in question, are outweighed by objective evidence, including both mental status and physical examination findings, along with claimant's self-reports acknowledging improvement and stabilization of his physical and mental health with compliant

medication management—all of which are negative for abnormalities to suggest the same degree of limitation in function.

[Filing No. 13-8 at 26.] From this, the Court can glean two reasons the ALJ gave to support her findings of inconsistency: (1) the general success of treatment in controlling symptoms, as evidenced by improvement, stabilization, and relatively normal examinations; and (2) his own personal reports acknowledging the same.

 Plaintiff takes issue with the ALJ not relying on his subjective complaints at the February 2015 consultative exam. [Filing No. 15 at 17.] Further, he argues the ALJ failed to mention the context of the records she perceived to be inconsistent with his allegations. [Filing No. 15 at 17-19.] Lastly, Plaintiff finds issue with the ALJ finding his mother's statements inconsistent with the record. [Filing No. 15 at 19.]

The Commissioner contends that the ALJ did not need to explain why Plaintiff's individual complaints were not persuasive, and the ALJ said enough to minimally explain why his subjective complaints were inconsistent with the record. The Commissioner argues that an ALJ's evaluation need not be perfect if the evaluation has explanation or support. [Filing No. 17 at 11 (citing *Shielder*, 688 F.3d at 312; *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009).] The Commissioner concludes that the ALJ's evaluation was not patently wrong considering the conflicts between his testimony and the exams of record, his denials of difficulty walking, and lack of treatment between October 2016 and the end of the period at issue. [Filing No. 17 at 11.]

Considering the record as a whole, the ALJ did not improperly consider the record evidence in evaluating his subjective statements endorsing daily headaches, dizziness, concentration deficits, and fatigue. [*See* Filing No. 13-7 at 7-8.] Specifically, the ALJ noted that despite Plaintiff testifying at a prior hearing to knee pain, sleep apnea, and hypertension, these complaints were absent from the consultative examiner's report in February 2015. [Filing No. 13-8 at 22.] And the

ALJ noted that while he complained of headaches in his February 2015 consultative examination, he denied taking medication, and advised his primary care physician that his smoking habits were likely the cause. [Filing No. 13-8 at 23, 26.] Plaintiff argues this brief statement on headaches and citing to a record saying they were attributable to smoking habits downplayed his sinusitis and mischaracterized his headaches. [Filing No. 15 at 18.] Plaintiff is similarly concerned with heavy weight being given to this 2015 report and the absence of knee pain. However, the ALJ did not ignore subsequent reports of Plaintiff's issues with pain in his knees, nor further statements regarding headaches. The ALJ observed that maxillary sinusitis was a non-severe impairment and Plaintiff made no mention about headaches or any limitations during the relevant period, or during his supplemental October 2021 hearing. [Filing No. 13-8 at 14.]. The ALJ properly reasoned the inconsistencies with Plaintiff's statements were due to overall examinations and other medical records. [Filing No. 13-8 at 24.]

Concerning Plaintiff's complaints that the ALJ failed to mention the context of evidence and cherry-picked details that ran contrary to his statements, Plaintiff takes issue specifically with a May 2016 record indicating back pain but denying knee pain, and a post-surgical October 2016 record indicating an ability to bear weight but being unbalanced when doing so. [Filing No. 15 at 18.] The ALJ did not err in either regard. Here, the ALJ noted that Plaintiff's back complaints resumed in May 2016, but noted exams remained normal overall, was then given pain medication, and there was no indication of any surgical intervention during the period in question. [Filing No. 13-8 at 20, 26.] As for the ALJ not identifying an observation that Plaintiff was unstable while bearing weight on his foot, this is true. [*See* Filing No. 13-8 at 26.] However, the ALJ noted that treatment records from this provider ceased following this observation, his own statements lacking

a difficulty walking, and received no other treatment. The ALJ did not err in weighing this objective medical evidence against his statements to reasonably account for his impairments.

Lastly, Plaintiff takes issue with the ALJ's evaluation of the observation by his mother. [Filing No. 15 at 18-19.] Plaintiff argues that the ALJ using his mother's statements to discount his subjective statements, then turning around and finding her statements were inconsistent with the record evidence, is an inconsistent application of facts. In opposition, the Commissioner contends that Plaintiff does not identify any serious issues with the ALJ's evaluation of his mother's statements, and even if this evaluation was not perfect, it need not be so long as there is support and explanation. [Filing No. 17 at 11.] Though Plaintiff takes issue with the ALJ using his mother's statements to find inconsistencies in his subjective statements, and then similarly finding her statements not fully consistent with the medical evidence, the ALJ's opinions can stand on their own. And a careful reading of the ALJ's opinion shows that she did not reach too far in her summary of Plaintiff's daily activities. The ALJ found his statements that he had help in preparing meals and house chores inconsistent with his mother's February and April 2015 function reports where she noted he could do daily, simple and routine tasks independently. [Filing No. 13-8 at 16, 18.] Then, the ALJ identified inconsistencies in the February 2015 report where his mother indicated issues relating to vision and concentration, but that he was on the computer daily and had no issues with maintaining self-care. [Filing No. 13-8 at 28.] Similarly, the ALJ identified issues in her April 2015 report where she indicated Plaintiff's conditions affected his abilities to lift, squat, bend, reach, walk, sit, hear, and see, noting a difficulty hearing and seeing, but continued to endorse an ability for self-care. [Filing No. 13-8 at 28.] To the extent the ALJ's evaluation of Plaintiff's mother's statements were in error for not explaining why those activities were inconsistent with his own subjective allegations, this is not fatal to the ALJ's analysis. The ALJ

thoroughly detailed the medical evidence prior to evaluating these subjective statements, and the Court can trace the path of the ALJ's reasoning in evaluating Plaintiff's symptoms.

The Court only reverses symptom analysis under SSR 16-3p when the analysis is "patently wrong," which requires an absence of "explanation and support." *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). The ALJ provided explanation and support such that reversal is inappropriate.

### IV.
### CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Plaintiff benefits. Final judgment will issue by separate entry.

Date: 9/30/2024

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**